1

2   Elizabeth D. Tate, SBA # 32659

3   2953 North 48th Street

4   Phoenix, AZ 85018-7749
    Phone: (602) 670-4653
5   Fax: (602) 595-5959

6   E-mail: attorneyelizabethtate@yahoo.com

7   Attorney for A.M. by next friend, Kimberly
    Marshall and Kimberly Marshall
8

9               **IN THE UNITED STATES DISTRICT COURT**

10                 **FOR THE DISTRICT OF ARIZONA**

11

12  **A.M. by next friend, Kimberly**
    **Marshall** and                          **Case #**
13  **Kimberly Marshall**

14                              Plaintiffs,

15            v.                               **COMPLAINT AND**
                                               **DEMAND FOR JURY TRIAL**
16  **GEORGE GERVIN YOUTH**
    **CENTER, INC.,** a Texas Non-
17  Profit

18
    **DENISE MENDOZA, Principal of**
19  **George Gervin Preparatory**
    **Academy, in her official and**
20  **individual capacities**

21

22
                             Defendants.
23

24       Plaintiff A.M. by  next friend Kimberly Marshall and Kimberly Marshall,

25  their undersigned attorney of record, files this  Complaint and Demand for

26

Jury Trial pursuant to Federal Rules of Civil Procedure, Rules 7(a)1, 8(a & d), and 38(a & b).

### 1. Parties, Claims, and Jurisdiction

**1.**   Plaintiff A.M. is a minor (under the age of eighteen), African-American male when the events alleged herein occurred.

**2.** At all times material to this Complaint, A.M. has suffered from three diagnosed disabilities: (1) ADHD (attention deficit hyperactivity disorder), (2) a learning disability and (3) reading dyslexia.  He was, in his capacity as a student at George Gervin Preparatory Academy, an individual with a "disability" as that term is defined in 42 U.S.C. 12102 and limited in the major life activities of concentrating and thinking.

**3.** Plaintiff, Kimberly Marshall ("K.M."), is an adult unmarried resident of Maricopa County, Arizona, and the mother and natural guardian of A.M and brings this action on A.M.'s behalf.

**4.** The Defendant, George Gervin Youth Center, Inc. (Gervin) has been at all times material to this complaint, a Texas not-for-profit corporation which owns and operates a public school  (grades kindergarten through eighth grade) know as George Gervin Preparatory Academy, located in Phoenix, Maricopa County, Arizona. Gervin describes its school on its website as follows:

"George Gervin Prep Academy got its start when the George Gervin Youth Center opened its doors in 1991. This nonprofit organization was created to provide innovatively designed, comprehensive, and culturally sensitive services to troubled youth and their families. From that mission came our school.

George "Iceman" Gervin, former San Antonio Spurs player and member of the NBA Hall of Fame, has a passion for community service and assisting youth in their educational needs. With a school and community center in San

Antonio, Gervin and his supporters extended their reach in 2012 when George Gervin Prep Academy opened to serve middle school youth in the Phoenix area.

George Gervin Prep is a charter school that serves about 250 kindergarten through eighth graders in south Phoenix. Because we are a small school, we can provide individualized instruction to our students, allowing them to reach and achieve their academic potential".

The majority of Gervin's students are African-American and Hispanic with about 1% being Caucasian.

**5.**  Defendant Denise Mendoza is the principal at George Gervin Prep Academy and is sued in her official and individual capacities.  Mendoza is responsible for all of the school's day to day operations including its special education services that were to be offered to A.M for the 2015-2016 and 2016-2017 school years. Mendoza was responsible for giving the Latino special ed students at Gervin preferential treatment.

**6.** All events alleged herein occurred in Maricopa County, Arizona, within the jurisdiction of this Court.

**7.** Gervin is a subject to the coverage of the Rehabilitation Act §504, 29 U.S.C. §794, the Americans with Disabilities Act, Subchapter III, 42 U.S.C. 12181 et seq., because it is a "public accommodation", to-wit "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;" as defined by 42 U.S.C. 12181(7) (J).

**8.** Plaintiff A.M. seeks relief herein for his claims of (1) violation of the Americans with Disabilities Act, Subchapter III, 42 U.S.C. 12182 ("ADA"), (2) violation of the Rehabilitation Act §504,  (3) violation of 42 U.S.C. 1983, (4) violation of 42 U.S.C. 2000 d and (5) violation 42 U.S.C. 1981.

**9.** This Court has jurisdiction for all of A.M.'s claims pursuant to 28 U.S.C. 1331 (since they arise from federal law) and 28 U.S.C. 1343(a) (subsecs. 1 & 4).

**10.** Plaintiff K.M. seeks relief herein for her claim of (1) violation of the Americans with Disabilities Act, Subchapter III, 42 U.S.C. 12182 ("ADA"), specifically based upon her association with her disabled son, A.M. [see 42 U.S.C. 12182(E)].

**11.** This Court has jurisdiction for K.M.'s ADA claim pursuant to 28 U.S.C. 1331 (since it arises from federal law) and 28 U.S.C. 1343(a) (subsecs. 1 & 4).

**12.** Based upon the foregoing, this Court is the proper venue pursuant to 28 U.S.C. 1391, subsecs. (b)(2) and (c) (2).

## 2. Additional fact allegations supporting claims

**13.** On August 4, 2015, A.M. began his first day of classes as a seventh grader for the 2015 – 2016 school year at Gervin. A.M.'s previous private school recommended that K.M. enroll A.M. in a school that could better address A.M.'s educational needs. After research, K.M. found Gervin.  K.M. explained to staff at Gervin that A.M. suffers from ADHD, dyslexia and has a learning disability and needs an IEP. Gervin promised to be a school committed to addressing A.M.'s special needs.

**14.** Upon enrollment, Ms. Baptist, Gervin's administrative assistant, requested that K.M. sign a release to permit Gervin to get A.M.'s IEP and school records from Saint Louis the King Catholic School, the elementary school, that A.M. previously attended. K.M. signed the release and also gave Ms. Baptist daily ADHD medications to be administered to A.M.  At school.

**15.** Weeks passed and no one at Gervin ever met K.M. to implement A.M.'s IEP. Also, Ms. Baptist never contacted K.M. to refill A.M.'s daily ADHD medication. K.M. complained to Defendant Gregory Copeland, Principal at the time, who assured K.M. that A.M. would receive special education soon because Gervin was in the process of hiring a special education teacher. Copeland also claimed that A.M. was receiving his medication.   In the meantime, A.M. stayed in the regular classroom. In the regular classroom, A.M.  was not able to make progress in his classes and was earning grades of Ds and Fs.

**16.** Gervin eventually hired a special ed teacher, Ms. Hammerand.  On January 15, 2016, Ms. Hammerand contacted K.M. to get a copy of A.H.'s prior IEP.  Hammerand claimed that Gervin never received the IEP from St. Louis the King.  This statement turned out to be untrue because Ms. Lopez at St. Louis the King told K.M. that she had personally faxed it over when it was first requested by Gervin.  Ms. Lopez gave K.M. another copy of A.M.'s prior IEP.  K.M. personally delivered the IEP to Ms. Hammerand in January of 2016.

**17.** In February of 2016, Gervin tested A.M. to determine an appropriate IEP for A.M.  On February 28, 2016, K.M. met with then Assistant Principal Mendoza, Michael Moretta, an education consultant hired by Gervin and

Hammerand to discuss the results of A.M.'s testing. Moretta recommended that A.M. educational needs would best be served by a placement outside of Gervin.  Mendoza refused to follow Moretta's recommendation.  Five months later, on May 6, 2016, Gervin developed an IEP for A.M.  A.M. was to be instructed by a non-certified teacher, Darshay Williams, for a few classes five days a week and was to receive instruction from Hammerand, a certified special education teacher in a group setting, for a few classes, two days per week.  A.M. did not progress under the IEP. In July of 2016, because A.M. was not progressing, K.M.  took A.M. out of Gervin.

**19.** During the summer of 2016, K.M. tried to find another school for A.M. but because all the other schools were full. So, K.M. had to re-enroll A.M. at Gervin for the 2016-2017 school year.  K.M. asked Mendoza for a different IEP for A.M. In September of 2016, Garvin, under the instruction of Mendoza, gave A.M. the same inadequate IEP but then gradually even stopped providing those services.

**20.** K.M. took it upon herself to improve A.M.'s IEP with an accommodation.  K.M. asked that A.M. and the teachers keep a homework log to keep track of A.M.  homework. Additionally, K.M. asked A.M.'s English, Social Studies and Math teachers to place A.M. in the front of the class. A.M.'s teachers completed the homework log for one week and then stopped. K.M.'s A.M.'s teachers refused to place him in the front of the class.    A.M.'s English teacher simply did not do so. Another teacher told K.M. that he had no time to "babysit" A.M.  Another teacher refused K.M's request telling K.M. that A.M. "needed his butt whooped". A.M.'s teachers simply refused to implement K.M.'s requested accommodations.

**21.**  In November of 2016, K.M. secured the services of an education advocate. After no IEP meetings were scheduled, in December of 2016, K.M. and the education advocate requested an IEP meeting for A.M.  and insisted A.M. be tested. Garvin then gave and paid for a neuro-psychological evaluation for A.M. However, Garvin conducted no follow up meeting to discuss the results of the testing. In January of 2017, Garvin implemented A.M.'s inadequate IEP again.  A.M. still failed in his classes.  On March 9, 2017, on the advice of A.M.'s advocate, K.M. took A.M. out of Gervin and placed him in a private school for children with disabilities. K.M. asked Gervin to pay for A.M.'s private school but Gervin refused.

**22.** Gervin received federal assistance and is subject to the provisions of the Rehabilitation Act and 42 U.S.C 2000d that prohibits disability and race discrimination.

**23.**  A.M. was qualified to remain a student at Gervin with or without a reasonable accommodation. Gervin excluded and/or denied A.M. the benefits of an adequate IEP and/or paying for private schooling while A.M. was enrolled at Gervin.

**24.**  Gervin did not advise K.M. that A.M. could receive services at another school at Gervin's expense. When K.M. learned Gervin could pay for A.M.'s education another school, Gervin refused to do so.  Gervin has a practice and/or policy of not complying its procedural obligation to provide services to similarly situated African-American students to save money. Had A.H. not been African-American, Gervin would have met its obligation to provide A.H. with his constitutional right to due process and requests for disability accommodations. Mendoza treated the Latino special ed students

more favorably than A.M. ensuring that the Latino students had interpreters and all the support they needed for learning.

**25.**   Ever since August 4, 2015, K.M. has requested that Gervin and Mendoza provide A.M. with his constitutional right to due process to have an adequate IEP. Nonetheless, despite such requests and protests, Mendoza and  other professional staff at Gervin failed and refused to provide A.M. with an adequate IEP that constituted disability and race discrimination in violation of 42 U.S.C. 12182,  the Rehabilitation Act, 42 U.S.C. 2000d and 42 U.S.C. 1981 including, inter alia:

(A) Not providing A.M. with an IEP and special education of any kind for 2015.

(B) Not honoring K.M.'s requests to create a homework log and place A.M. in the front of the classroom.

(C) Failing to administer A.M.'s daily ADHD medication.

(D) Subjecting K.M. and AM. to insulting comments by teachers that they could not "babysit" A.M. and that A.M. "needed his butt whooped".

(E) Providing A.M. with an inadequate IEP in 2016 against its special education consultant's advice.

(E) Refusing to recommend and pay for A.M.'s private schooling since Gervin was unable to meet A.M.'s educational needs.

**26.**   Gervin and Mendoza intentionally discriminated against A.M. and were deliberately indifferent to A.M.'s right to due process under the Fourteenth Amendment and accommodation, knew that A.M. was substantially likely to be harmed. Gervin and Mendoza acted under color of state law to deprive A.M. of his right to due process and accommodation.

**27.** Gervin and Mendoza's discrimination against A.M. was by reason of A.M.'s disability and race because Gervin's teachers intentionally insulted and ridiculed A.M. and K.M. for his disability, gave the Latino students preferential treatment   and refuse to grant A.M. an accommodation.

**28.** The conduct of Gervin and Mendoza alleged herein constituted (A) disability discrimination by a public accommodation in violation of 42 U.S.C. 12182 and the Rehabilitation Act §504 (B) deprivation of a constitutional right under the Fourteenth Amendment  in violation of 42 U.S.C. 1983 (C) race discrimination in violation of 42 U.S.A. 2000d for programs that receive federal assistance and (D) race discrimination in violation of 42 U.S.C. 1981 in the making of a contract.

**29.** Gervin and Mendoza should be subject to an award of punitive damages to prevent and deter discrimination in the future.

### 3. Demand for Trial by Jury

Plaintiffs, A.M. by next friend Kimberly Marshall, and Kimberly Marshall each demand a trial by jury on their claims pursuant to the U.S. Constitution Seventh Amendment and FRCP Rule 38. '

### 4. Relief Requested

### Count One: ADA, 42 U.S.C. 12182 (as to both Plaintiffs and against Gervin only)

1. Compensatory damages
2. Injunctive relief including, inter alia,  payment of tuition and compensation for A.H.'s loss of educational opportunities, pursuant to 42 U.S.C. 12188(a) (1).

3.  Reasonable attorney's fees

4.  Taxable costs pursuant to Federal Rules of Civil Procedure Rule 54(d) (1) and 28 U.S.C. 1920.

**Count Two: Violation of the Rehabilitation Act (as to A.M. and against Gervin Only)**

1. Compensatory and general damages

2.  Injunctive relief including, inter alia, payment of tuition and compensation for loss of A.M. educational opportunities

3.  Reasonable attorney's fees

4.  Taxable costs pursuant to Federal Rules of Civil Procedure Rule 54(d) (1) and 28 U.S.C. 1920.

**Count Three: Violation of 42 U.S.C. 1983 for violation of rights under the Fourteenth Amendment (as to A.M. and against both Defendants)**

1. Compensatory damages in an amount to be determined by the trier-of-fact.

2. Punitive damages

3. Injunctive relief

4. Reasonable Attorney's fees

5. Taxable costs pursuant to Federal Rules of Civil Procedure Rule 54(d) (1) and 28 U.S.C. 1920.

**Count Four: violation of 42 U.S.C. 2000d (as to A.M and against Gervin only)**

1. Compensatory and general damages

2. Injunctive relief including, inter alia, payment of tuition and compensation for loss of A.M.'s educational opportunities

3.  Reasonable attorney's fees

4.  Taxable costs pursuant to Federal Rules of Civil Procedure Rule 54(d) (1) and 28 U.S.C. 1920.

### **Count Five: violation of 42 U.S.C. 1981 (as to both Plaintiffs and against both Defendants)**

1. Compensatory and general damages in an amount to be determined by the trier-of-fact.

2. Punitive damages

3. Injunctive relief, including, inter alia, actions to enjoin and prevent future race discrimination, payment for private school, compensation for A.M.'s loss of educational opportunities

4. Reasonable Attorney's fees

5. Taxable costs pursuant to Federal Rules of Civil Procedure Rule 54(d) (1) and 28 U.S.C. 1920.

Respectfully signed and submitted this 2ND day of August, 2017.

/s/ Elizabeth D. Tate

_____

Elizabeth D. Tate, Attorney for Plaintiffs